UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HERBERT E. ANDERSON,

                                   Plaintiff,

                                                                <u>DECISION AND ORDER</u>

                                                                 06-CV-6202L

                        v.

XEROX CORPORATION,
LAWRENCE M. BECKER,
Xerox Corporation Plan Administrator,
THE RETIREMENT INCOME GUARANTEE PLAN (RIGP),

                                   Defendants.
_____

**INTRODUCTION**

       This case is one of a group of related cases presenting claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101 *et seq.*, by current and former employees of Xerox Corporation ("Xerox"), relating to their pension benefits. In general, these cases concern the manner in which benefits have been calculated for employees who left Xerox's employ at some point, at which time they each received a lump-sum distribution of accrued pension benefits, and who later returned to work for Xerox.

       The basic issue in these cases involves how to take those past distributions into account when calculating plaintiffs' current or future benefits, so that plaintiffs are neither shortchanged nor given a windfall. The particular bone of contention is defendants' use of a so-called "phantom account," which involves reducing participants' benefits according to a formula that utilizes the fiction that the prior distribution had remained in the participant's account, and appreciated accordingly. For a fuller description of the phantom-account formula, *see Frommert v. Conkright*, 433 F.3d 254, 260 (2d Cir. 2006) ("*Frommert I*").

This particular case was brought by a single plaintiff, Herbert Anderson, against Xerox Corporation, the Xerox Retirement Income Guarantee Plan ("RIGP"), and Lawrence M. Becker, the administrator of the RIGP. Like most of these cases, this action has a long and somewhat convoluted history, the most pertinent aspects of which will be summarized here.

Plaintiff resigned from Xerox in 1980 and received a lump-sum distribution at that time. In 1984, he was hired by Versatec (which plaintiff describes as "a Xerox Company," *see* Anderson Aff. (Ex. 10) ¶ 5, and became a participant in its retirement plan. Versatec became a part of Xerox's XES/CGS Group in 1993, and Versatec's retirement plan was incorporated into the RIGP. Plaintiff was terminated in 2002. Plaintiff's Statement of Material Facts (Dkt. #10-12) ¶¶ 1-5. He filed this action in April 2006, asserting, in brief, that he is entitled under the RIGP to greater benefits than those he has been paid by defendants.

In October 2006, defendants moved for summary judgment, principally on the ground that in 2002, in exchange for certain severance benefits, plaintiff executed a release of all claims that he had or might have had against defendants, including ERISA claims. Specifically, defendants note that on October 9, 2002, plaintiff signed a release stating that for certain identified consideration, he "release[d defendants] from any and all claims of any kind, known or unknown, which I now have or may have against the Releasees by reason of facts which have occurred prior to the date of this Release." *See* Dkt. #7-4 at 2. ERISA claims were expressly included within the scope of the release, which, even aside from that, was by its terms quite broad. *Id.*

After defendants moved for summary judgment, plaintiff cross-moved for summary judgment, based on the decision by the Court of Appeals for the Second Circuit in *Frommert I*. The Second Circuit held in *Frommert I* that the "phantom account may not be applied to employees rehired prior to the issuance of the 1998 SPD [summary plan description]." *Id.* at 263. The basis for the court's ruling was its finding that "the phantom account was not part of the Plan until 1998 when it was added by amendment of the Plan's text through its explanation in the 1998 SPD," and that "application of the phantom account by the defendants prior to its inclusion in the Plan by

- 2 -

amendment constituted a prohibited reduction of justified expectations of rehired employees' accrued benefits in contravention of § 204(g)." *Id.* at 263.

The court also held that "for employees rehired subsequent to the amendment of the Plan through the 1998 SPD, the phantom account is a component of the Plan that they joined and thus may permissibly be applied to them." *Id.* Again, the basis for the court's decision was its conclusion that the phantom account "was added by amendment of the Plan's text through its explanation in the 1998 SPD," which was widely distributed to Xerox employees and Plan participants. *Id.*

Anderson was rehired prior to 1998. Based on *Frommert I*, therefore, in June 2007 this Court denied defendants' motion for summary judgment in *Anderson*, and granted plaintiff's cross-motion. (Dkt. #23.)[1]

At that point, however, this Court had also issued a decision on remand in *Frommert*, setting forth the terms of the remedy for defendants' ERISA violation. In that decision, I also held that the release forms signed by several of the *Frommert* plaintiffs (which generally released Xerox from any claims in exchange for salary continuance or similar severance benefits) were ambiguous in certain material respects, and that they therefore did not bar the plaintiffs' ERISA claims. *See Frommert v. Conkright*, 472 F.Supp.2d 452, 460-65 (W.D.N.Y. 2007).

At the time this Court issued its June 2007 decision in *Anderson*, that *Frommert* decision was on appeal before the Second Circuit. Because of the overlap between some of the issues in *Frommert* and *Anderson*, in my June 2007 *Anderson* decision, the Court stayed further proceedings in *Anderson* pending a decision by the Court of Appeals on the *Frommert* appeal. Dkt. #23 at 1.

In 2008, the Court of Appeals issued another decision in *Frommert*, 535 F.3d 111 ("*Frommert II*"), which, *inter alia*, reversed this Court's ruling that the releases at issue in *Frommert* were unenforceable. As to that issue, the Second Circuit stated:

---

[1]The Court's decision was entered on the record in open court on May 31, 2007. (Dkt. #22.) A one-page order was issued effectuating that decision on June 14, 2007. (Dkt. #23.)

> There appears to be no dispute that those Plaintiffs-Appellees who signed these releases had ample time (45 days) to decide whether to sign the release, that Xerox encouraged such individuals to consult an attorney, and that the signatories received salary continuances in consideration of their releasing claims. Some Plaintiffs-Appellees even modified the terms of the release forms with which they had been presented before signing them. As to the language of the releases themselves, we cannot conclude, as the District Court did, that the express terms of these releases were "at the very least ambiguous as to what the employee was giving up in exchange for salary continuance." *Frommert*, 472 F.Supp.2d at 462. As the District Court's interpretation of the release forms is incorrect, it cannot stand. Unless the release form at issue specifically exempted this litigation as noted above, the releases signed by certain Plaintiffs-Appellees are enforceable.

*Frommert II*, 535 F.3d at 122-23.

Based principally on the Second Circuit's decision in *Frommert II*, defendants have moved for reconsideration of this Court's June 2007 decision in *Anderson*. Defendants contend that Anderson's claims are barred by the release that he executed.

Defendants further contend that Anderson's claims should be dismissed as time-barred. In support of that argument, defendants rely on the Second Circuit's decision in *Hirt v. Equitable Retirement Plan for Employees, Managers and Agents*, 285 Fed.Appx. 802 (2d Cir. 2008), which, defendants say, clarified when an ERISA cause of action accrues in a case involving an alleged failure to notify a plan participant of a plan's terms. According to defendants, *Hirt* makes clear that Anderson's claims are untimely, as explained in more detail below.[2]

---

[2] As stated, these cases have a tortuous history. While not all of that history directly affects the instant case, it does provide some additional context and background.

In April 2010, the United States Supreme Court reversed the Court of Appeals' decision in *Frommert II*, holding that the Court of Appeals had "erred in holding that the District Court could refuse to defer to the Plan Administrator's interpretation of the Plan on remand, simply because the Court of Appeals had found a previous related interpretation by the Administrator to be invalid." *Conkright v. Frommert*, 559 U.S. 506, 522 (2010).

The Supreme Court remanded the case to the Court of Appeals, which in turn remanded to this Court. On remand, this Court applied deferential review and held that the Plan Administrator's proposed offset was a reasonable interpretation of the Plan. *Frommert v. Conkright*, 825 F.Supp.2d 433, 438-43 (W.D.N.Y. 2011). The Court also concluded that the Plan gave participants adequate notice of the phantom account offset. *See id.* at 444-47.

On appeal, the Second Circuit agreed with the plaintiffs' arguments that this Court's holding, which essentially adopted the Plan Administrator's interpretation of the Plan, (1)

(continued...)

## DISCUSSION

### I. Plaintiff's Release

### A. Consideration for the Release

Defendants have asked the Court to reconsider its June 2007 Decision and Order in this case. A so-called "motion for reconsideration" should be granted only when the movant identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted).

Defendants assert that *Frommert II* effected a change in the relevant law, insofar as it upheld the releases signed by the plaintiffs in that action. Defendants contend that the reasoning of *Frommert II* with respect to the releases applies with equal force in the case at bar, and that this Court should hold that Anderson's claims are barred by his release.

Plaintiff has conceded that "there is no question that the [defendants'] motion for reconsideration must be granted to the extent that the summary judgment in favor [of] plaintiff be vacated," but plaintiff contends that discovery is needed regarding the validity of the release. Dkt. #39. *See also* Transcript of Proceedings on June 2, 2011 (Dkt. #42), at 68 (statement by plaintiff's counsel that the motion to reconsider "should be granted and the matter should go to discovery").[3] According to plaintiff's counsel, such discovery should relate to the circumstances under which

---

[2](...continued)
violated ERISA's notice provisions and (2) was an unreasonable interpretation of the Plan. The court therefore vacated this Court's judgment and remanded the case to this Court for further proceedings. *Frommert v. Conkright*, 738 F.3d 522 (2d Cir. 2013). The *Frommert* action remains pending in this Court.

[3] At other times, plaintiff has taken the position that defendants' "motion must be denied in its entirety ... ." Plaintiff's Mem. of Law (Dkt. #31-5) at 5. Since plaintiff's position on that score is not dispositive of this Court's decision, however, I find this to be of no moment. The Court's analysis is not affected by whether plaintiff has conceded this point.

plaintiff signed the release, and when plaintiff first became aware that his benefits would be reduced by the phantom account offset. *See* Dkt. #39 at 2.

Both sides agree that the motion to reconsider is affected, if not necessarily controlled, by *Frommert II*. In that case, the Second Circuit recognized the principle that "an individual can waive his or her right to participate in a pension plan governed by ERISA only if his or her waiver is made knowingly and voluntarily." 535 F.3d at 121. The court also set forth a non-exhaustive list of six factors that bear upon whether a release will be considered knowing and voluntary:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, [as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so] and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Id.* A court should consider the "totality of the circumstances" in determining whether a waiver of ERISA rights is knowing and voluntary. *Id.*

Applying these factors to the facts before it, the Court of Appeals in *Frommert II* found the releases at issue there to be enforceable. The court emphasized that the plaintiffs "had ample time (45 days) to decide whether to sign the release, that Xerox encouraged such individuals to consult an attorney, and that the signatories received salary continuances in consideration of their releasing claims." *Id.* The court further noted that some of the plaintiffs had "even modified the terms of the release forms with which they had been presented before signing them," and the court found no ambiguity concerning "what the employee was giving up in exchange for salary continuance." *Id.* at 122-23.

In the case at bar, defendants contend that the factors outlined in *Frommert II* support a finding, as a matter of law, that plaintiff's claims are barred in this case. Specifically, they note that: plaintiff has a college degree and worked for Xerox Engineering Systems ("XES") as an account manager; plaintiff stated, in the agreement, that he had been given 45 days to review the agreement and consider whether to sign it, and that he had been advised to consult with an attorney before

signing it; even after signing and returning the agreement, plaintiff had seven days to change his mind and revoke the release; and plaintiff acknowledged that the consideration he received in exchange for the release was in addition to anything of value that he was otherwise owed. *See* Dkt. #7-4 at 2-3.

In response, plaintiff asserts that this case is not controlled by *Frommert II*, for several reasons. Perhaps the most significant of these is that, according to plaintiff, there was inadequate consideration to support the waiver.

Plaintiff has submitted an excerpt from the Xerox Human Resources Manual ("HR Manual") (Dkt. #10-2), which is dated April 7, 1998, with an effective date of October 15, 2001. Under the heading "Severance Pay," the HR Manual states that in cases of involuntary separation from employment, the employee is entitled to a certain number of weeks of severance pay (depending on his years of service), "provided that the employee first executes a release of claims in a form acceptable to Xerox." Dkt. #10-2 at 1.

Plaintiff has argued that his severance pay was not "in consideration of the release, as it was a benefit to which Plaintiff was entitled." Plaintiff's Mem. (Dkt. #31-5) at 17. This ignores the fact that according to the HR Manual, severance pay was expressly conditioned on the employee's execution of a release. Plainly, then, Anderson had no freestanding right to severance pay; his severance pay was consideration for his release, and vice versa. I see nothing untoward in that arrangement, or anything that renders the consideration inadequate. *See Melanson v. Browning-Ferris Indus., Inc.*, 281 F.3d 272, 278 (1st Cir. 2002) (employee's receipt of severance pay was adequate consideration for execution of release); *Recchia v. Kellogg Co.*, 951 F.Supp.2d 676, 690 (D.N.J. 2013) (employee's receipt of 26 weeks of severance pay constituted "meaningful consideration in exchange for his waiver of claims").

Plaintiff also argues that his case is distinguishable from *Frommert* because the plaintiffs in *Frommert* received "salary continuance," whereas plaintiff received "severance pay." Plaintiff contends that severance pay is a non-negotiable benefit, whereas salary continuance is a negotiable

inducement to an employee to leave his job voluntarily. *See* Plaintiff's Mem. (Dkt. #31-5) at 6, 18; Dkt. #7-4 at 2.

The release signed by plaintiff does reflect that the XES representative crossed out a word (presumably "continuance," based on a comparison of Anderson's release and the releases in *Frommert*), so that the release provides that XES would provide plaintiff with "26 weeks of salary ... ." Plaintiff's attorney states in plaintiff's memorandum of law (with no citation to the record) that when Anderson was first presented the release by his manager, the release stated that he would receive salary continuance. Anderson allegedly responded that salary continuance did not apply to him, as he was not leaving voluntarily. The manager then struck the word "continuance." Dkt. #31-5 at 6.

Even accepting plaintiff's contention that the *Frommert* plaintiffs received "salary continuance," whereas he received "salary" or "severance pay," that is a distinction without a difference. As the cases cited above demonstrate, severance pay can constitute valid consideration for a release. Furthermore, both the release itself and the HR Manual expressly stated that plaintiff's receipt of severance pay was *conditioned* on his execution of a release. Thus, it was contemplated from the beginning that plaintiff would execute a release as a condition of his receipt of severance pay. *See Kramer v. Vendome Group LLC*, No. 11 Civ. 5245, 2012 WL 4841310, at *5 (S.D.N.Y. Oct. 4, 2012) (noting that "the Release explicitly states that the severance pay alone constituted consideration for the Release," and finding that "this factor weighs in favor of the validity of the Release"); *DesAutel v. Tetra Tech EC, Inc.*, No. CV-11-187, 2012 WL 274743, at *4 (E.D.Wash. Jan. 31, 2012) (rejecting plaintiff's argument that his release of employer from discrimination and retaliation claims warranted more consideration than the standard severance payment of two weeks' salary that he received, and stating that "courts do not generally inquire into the adequacy of consideration in determining whether a contract has been formed"); *Yousef v. Capital One Services, Inc.*, No. 11-cv-1687, 2011 WL 3739362, at *7 (D.N.J. Aug. 24, 2011) (plaintiff received adequate

consideration for release in the form of twelve months' base pay, since he "would not have been entitled to the severance benefits afforded to him had it not been for his execution" of the release).

In terms of consideration, then, plaintiff stands in the same position as the *Frommert* plaintiffs. The releases in *Frommert* generally provided that the employee released Xerox from all claims, in consideration of Xerox's agreement to provide the employee with a set period of salary continuance, as fully described in other documents that had been provided to the employee. *See, e.g.*, 00-CV-6311, Dkt. #133-7 at 45. Anderson's release stated that he released Xerox from any and all claims in consideration of Xerox's agreement to provide him with 26 weeks of salary, "and other good and valuable consideration the adequacy and receipt of which are hereby acknowledged ... ." Dkt. #7-4 at 2.

Either way, the employee was releasing claims in exchange for salary, in a lump sum or over a period of time. Whether the consideration given by Xerox is characterized as salary continuance or severance pay is not dispositive. To hold otherwise would be to elevate form over substance.

Plaintiff is also incorrect in arguing that "[a] crucial difference between the *Frommert* Plaintiffs and the Plaintiff herein in that the *Frommert* plaintiffs ... left their jobs voluntarily," whereas Anderson "was terminated from employment." Dkt. #31-5 at 18. While many of the *Frommert* plaintiffs did choose to participate in a voluntary reduction in force ("VRIF"), that does not appear to be true of all of them. Some of the releases in *Frommert* are described on their face as having been executed in the context of an involuntary reduction in force or "IRIF." *See, e.g., Frommert*, 00-CV-6311, Dkt. #133-7 at 45, 61, 75. Several others are simply described as "general releases," with no indication of whether the employee was being terminated involuntarily or choosing to participate in a VRIF. *See, e.g., id.* at 53, 63, 71. Yet the Second Circuit in *Frommert II* drew no distinction between the IRIF, VRIF, or generic releases.

**B. Whether the Release Was Knowing and Voluntary**

Plaintiff contends that his release was "obtained through fraud and misrepresentation." Dkt. #31-5 at 20.  Plaintiff alleges that he never received a copy of the 1998 SPD, although he concedes that he did receive a copy of the "You and Xerox, Value Added" booklet ("booklet") that was issued in 1998.  *See* Dkt. #10-3.  While the booklet may not have been a "plan document" for ERISA purposes sufficient to amend the plan, *see Coriale v. Xerox Corp.*, 490 Fed.Appx. 387, 389 (2d Cir. 2012), it did contain detailed information about Anderson's benefits, which is of critical relevance to the question of whether his release was knowing and voluntary.

Specifically, the booklet issued to Anderson stated that his "benefit at retirement [would be] the greatest of the following three components:  the RIGP formula, the Cash Balance Retirement Account (CBRA), or the Transitional Retirement Account (TRA)," and that Anderson's "benefit w[ould] be based on the one that [was] the greatest at the time [he] retire[d]."  Dkt. #10-3 at 1.

The booklet further stated that as of the date of the booklet, "[u]nder the **RIGP formula,** the total monthly benefit [Anderson had] earned to date, payable at age 65, [was] **$3204 per month**."  However, the booklet went on to state, "Your benefit **will be reduced** if you've had a prior distribution ... ."  *Id.*  The booklet further set forth the then-current value of Anderson's prior distributions, and stated that "[t]o make a fair comparison among the three components [*i.e.*, the RIGP, CBRA and TRA], we must include the current value of any prior distributions ... ."  It also stated that "[t]he payment of your RIGP benefit will not include the current value of your prior distribution ... ."  *Id.* at 2.

The SPD was worded differently, but provided essentially the same information as the booklet.  It broke down the pension calculation into three steps, and clearly delineated the process by which Xerox would determine the participant's benefit.  *See* 10-CV-6229, Dkt. #22-3 at 56.  But the booklet also explained, in no uncertain terms, that the participant's benefits would be reduced to reflect prior distributions.

Again, I recognize that the booklet is not a "plan document." *See Frommert I*, 433 F.3d at 267-68. In itself, then, it did not, and could not, amend the Plan. *Cf. id.* (although Xerox "Benefits Update" issued in 1995 "made clear the full import of the phantom account, its form was insufficient to effectively amend the text of the Plan") (internal quote and citation omitted). But that is not the issue as to the validity of plaintiff's release. The question regarding the release is whether it was made knowingly and voluntarily.

In that regard, the booklet did provide plaintiff with notice that his benefits would be reduced based on his prior distribution. Given the other attributes of the release mentioned above, including the length of time that plaintiff had in which to decide whether to sign it, and the fact that he acknowledged having been advised to consult with an attorney, I find as a matter of law that Anderson signed his release knowingly and voluntarily.

Still less persuasive is plaintiff's contention that the release was procured through fraud and misrepresentation. *See Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*, 544 F.Supp.2d 178, 189 (S.D.N.Y. 2008) ("conclusory allegations of fraudulent inducement are insufficient to overcome a release's unambiguous language"). Even accepting the truth of plaintiff's allegation that he did not realize, at the time he signed the release, what his actual monthly benefit was going to be, the fact remains that he voluntarily relinquished future claims in exchange for a present benefit. That he may now regret having done so is not enough to invalidate the release. *See Frommert II*, 535 F.3d at 122 ("neither the uncertainty of [plaintiffs'] benefits at the time of release nor the fact that hindsight has revealed that such benefits are now worth more than the signing Plaintiffs-Appellees likely expected at that time can render these releases unenforceable"); *see also Consorcio Prodipe*, 544 F.Supp.2d at 190 ("under New York law, all the facts and circumstances of the claims being released need not be disclosed in order for a release to be valid and enforceable").

**II. Statute of Limitations**

Defendants also contend that the Court should reconsider its prior decision on defendants' statute of limitations defense. In my June 2007 decision, I found that defendants had not established their entitlement to summary judgment on timeliness grounds, nor had they shown that plaintiff's motion should be denied on such grounds.

Defendants contend that the Court should revisit its decision, based on the 2008 decision by the Court of Appeals for the Second Circuit in *Hirt*, 285 Fed.Appx. 802. In *Hirt*, the court held that "the distribution of the [employer's] 1992 SPD constituted a clear repudiation of any pre-amendment benefits that plaintiffs could possibly claim," and that "any claim that participants received insufficient notice of the 1988-1992 [plan] amendments accrued upon the distribution of the 1992 SPD in December 1992," which rendered the plaintiffs' claims untimely. *Id.* at 804.

While *Hirt* may not represent a clear change in the law in this circuit, it did clarify that a "repudiation" sufficient to trigger the ERISA limitations period does not require the explicit rejection of a claim for benefits. *See Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (7th Cir. 2006) ("The authority of a district judge to reconsider a previous ruling in the same litigation ... is governed by the doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason, such as a change in, or clarification of [controlling] law") (Posner, J.) (quoted in *Quezada v. Fischer*, No. 9:13-CV-0885, 2014 WL 1289606, at *2 (N.D.N.Y. Mar. 31, 2014); *Vornado Realty Trust v. Marubeni Sustainable Energy, Inc.*, __ F.Supp.2d __, 2013 WL 6670237, at *6 (E.D.N.Y. Dec. 18, 2013) ("[B]ecause the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law") (internal quotes and citations omitted).

Given the above discussion of the effect of the booklet in terms of the notice provided to plaintiff, I conclude that defendants are also entitled to summary judgment on limitations grounds. Plaintiff received clear notice of defendants' repudiation of his present claim for benefits in 1998,

and his claims here, which were not brought until 2006, are barred by the six-year statute of limitations applicable to ERISA claims. *See Holland v. Becker*, No. 08-CV-6171, 2013 WL 5786590, at *2-*3 (W.D.N.Y. Oct. 28, 2013).

**III. Effect of the *Frommert* Decision**

The Court's decision here is unaffected by plaintiff's claim that defendant Becker breached his fiduciary duty by "ignor[ing] specific Court Decisions which held Xerox in violation of ERISA with regard to the way RIGP benefits are calculated for Xerox rehires such as the Plaintiff herein." Complaint ¶ 100. This Court has held, in other ERISA cases against Xerox, that the plaintiffs' claims were timely to the extent that they asserted claims for breach of fiduciary duty, based on defendants' continued application of the phantom account to employees rehired before 1998, in alleged contravention of the Second Circuit's 2006 *Frommert* decision. *See Holland v. Becker*, No. 08-CV-6171, 2013 WL 5786590, at *6 (W.D.N.Y. Oct. 28, 2013); *Kunsman v. Conkright*, 977 F.Supp.2d 250, 264 (W.D.N.Y. 2013).

The critical difference here, however, is that Anderson signed a release in 2002, relinquishing "any and all claims of any kind, known or unknown ... ." While the release only covered claims arising out of "facts which ha[d] occurred prior to the date of th[e] Release," nothing changed after that release was signed, with respect to plaintiff himself. That subsequent court decisions may have gone against Xerox, under different facts, is of no moment; plaintiff opted for the proverbial bird in the hand, and in doing so he chose to give up the chance of obtaining a more lucrative result later on. To hold otherwise would run contrary to the judicial policy in favor of enforcing unambiguous release agreements. *See Allen v. Sybase, Inc.*, 468 F.3d 642, 664-65 (10th Cir. 2006); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 373 (5th Cir. 2002); *Joe v. First Bank System, Inc.*, 202 F.3d 1067, 1070 (8th Cir. 2000); *Ruskay v. Waddell*, 552 F.2d 392, 398 (2d Cir. 1977) ("strong policy considerations" require giving effect to a general release).

This result is also consistent with the related *Frommert* litigation. The *Frommert* action was filed in this Court in 2000, and was ongoing as of the time that Anderson signed his release. There was always the possibility, then, that *Frommert* or some other action against Xerox might yield a result more favorable to the plaintiffs than what plaintiff agreed to accept here.

Moreover, in its 2008 decision in *Frommert*, the Court of Appeals held that "[u]nless the release form at issue specifically exempted this litigation ..., the releases signed by certain Plaintiffs-Appellees are enforceable," 535 F.3d at 123, while at the same time affirming this Court's remedy for those plaintiffs who had not signed releases. With respect to the plaintiffs who had signed releases, the Court said that "neither the uncertainty of such benefits at the time of release nor the fact that hindsight has revealed that such benefits are now worth more than the signing Plaintiffs-Appellees likely expected at that time can render these releases unenforceable." *Id.* at 122.[4]

**IV. Equitable Estoppel**

Plaintiff next contends that defendants should be equitably estopped from asserting a defense based on the release. As plaintiff recognizes, to prevail on an estoppel claim under ERISA, he must prove "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced," and he must also adduce facts sufficient to show "extraordinary circumstances." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 109 (2d Cir. 2008) (internal quotations and alterations omitted).

Plaintiff asserts that defendants promised to pay him the full amount to which he was entitled under the Value Added booklet, and that he relied on that promise when he signed the release. Plaintiff further argues that defendants' refusal to apply prior court directives concerning the

---

[4]The Supreme Court's later reversal of the Second Circuit's decision is of no consequence here, since that reversal dealt only with the nature of the remedy, not with its fundamental propriety.

phantom account to all employees rehired before 1998 supplies the "extraordinary circumstances" prong.

As explained above, however, plaintiff received what he was promised. That his benefits may have been less than he expected does not void his release. Plaintiff was apprised of the effect of his prior distribution, and he knowingly waived any claims he may have had, including ERISA claims, in exchange for 26 weeks of salary, pursuant to the terms of the release. In short, plaintiff received what he bargained for. *Cf. Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 78 (2d Cir. 1996) (reversing district court's grant of summary judgment on plaintiff's promissory estoppel claim, given evidence that plaintiff voluntarily resigned from her employment, based in part on an explicit statement that she would receive certain severance benefits, after which her employer reneged on that promise).

**V. Contempt**

Plaintiff also contends that the Court should hold a hearing on plaintiff's cause of action for contempt of court, based on his allegations that defendants have ignored the Second Circuit's ruling that the phantom account cannot lawfully be applied to employees rehired before 1998. Plaintiff has not formally moved for relief on this claim, but has asserted in his papers in opposition to defendants' motion for reconsideration that this Court should hold a hearing to determine whether defendants should be held in contempt.

As the preceding description of the history of this litigation makes clear, the legal landscape has shifted since plaintiff's papers were filed. Plaintiff is not entitled to the relief he seeks on his ERISA claim, and in light of the ongoing ERISA litigation against Xerox, as well as the fact that the basis for plaintiff's contempt claim relates to a wholly separate, albeit related case, I find that he has not presented evidence indicating that defendants have engaged in "disobedience to a lawful mandate of the court" that would warrant a finding of contempt. *El-Dehdan v. El-Dehdan*, 114 A.D.3d 4, __, 978 N.Y.S.2d 239, 245 (2d Dep't 2013).

**CONCLUSION**

Defendants' motion for reconsideration (Dkt. #25) is granted.  The Clerk of the Court is hereby directed to enter summary judgment in favor of defendants.  The complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       July 10, 2014.